Syllabus.

# Rufus Calef

### v.

# Phœbe J. Thomas.

1. Private nuisance—*right of party aggrieved, to abate.* Anything done to the hurt or annoyance of the lands, tenements or hereditaments of another is a private nuisance, and may be abated, that is, taken away or removed by the party aggrieved thereby, so as he commits no riot in the doing of it.

2. In order to justify the removal by a person from his land of the property of another, it must appear that it was wrongfully incumbering his premises, and that he therefore removed it, doing no unnecessary damage. If it appears that he unnecessarily destroyed it or appropriates it to his own use, the justification fails.

3. Malicious mischief—*must appear act was done maliciously.* On an indictment against a person, under the statute, for burning shocks of corn left on his land by a tenant, after his term has expired, it is necessary to prove that the burning was done maliciously, but it is not indispensable for that purpose that there should be direct proof of expressions of hatred or ill will; it will be sufficient if it appears from the evidence the act was prompted by malevolence or revenge, and not merely for the purpose of abating a nuisance.

4. Malicious prosecution—*prosecutor not bound to prove guilt of party accused, to escape liability.* A party making complaint against another and procuring his arrest upon a criminal charge, is not bound to prove his guilt or procure the finding of an indictment against him at the peril of being personally liable in an action for damages. If he acts upon probable cause he is excusable, whatever the result of the prosecution.

5. Same—*probable cause—how established.* On the trial of a suit for malicious prosecution, where the prosecution complained of was that the plaintiff had maliciously burned certain shocks of corn of the defendant, which he had left on the premises of the plaintiff, after his term as tenant expired, it was improper to give an instruction which made the fact that the defendant insisted upon his right to enter the plaintiff's premises with teams of oxen when the ground was wet, to remove his corn, an element in determining whether the defendant had probable cause to believe the plaintiff was guilty of the charge he had preferred against him.

6. Same—*burden of proof.* In an action for malicious prosecution, the burden of proof is on the plaintiff to show that the defendant acted maliciously and without any reasonable or probable cause.

7. Same—*advice of attorney.* If a party about to commence a criminal prosecution communicates to the State's attorney all the material facts affect-

ing the question of the guilt of the party about to be accused, which are known to him, and then acts upon his advice, the presumption of malice is rebutted, and an action against him for malicious prosecution will fail.

8. INSTRUCTIONS—*should not single out certain facts.* An instruction which singles out and gives undue prominence to certain facts, ignoring other facts proved and of equal importance in a proper determination of the case, is improper.

9. SAME—*not marked "given" or " refused."* Where instructions asked by a party are not marked by the court either as "given" or " refused," the effect is precisely the same as if they had been formally marked refused.

10. EVIDENCE—*of damage to land not admissible in suit for malicious prosecution.* In a suit for malicious prosecution, growing out of a prosecution instituted by a tenant against his landlord for burning some shocks of corn, evidence of damage done by the tenant to the land, is not admissible.

APPEAL from the Circuit Court of Piatt county; the Hon. C. B. SMITH, Judge, presiding.

Messrs. CREA & EWING, and Mr. E. A. BARRINGER, for the appellant.

Mr. P. A. HAMILTON, and Messrs. NELSON & ROBY, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Phœbe Thomas rented land to Morgan S. Thomas, which he cultivated in corn in the summer of 1872, his term expiring March 1st, 1873. In August, 1872, he entered into a contract whereby he sold his part of the crop (two-thirds) to Rufus Calef, to be delivered in the shock on the ground. Delay occurred, probably through the fault of Calef, in estimating the quantity of corn, so that the transaction was not finally closed between Calef and Morgan S. Thomas until in March, 1873. Phœbe Thomas rented the land on which the corn was, to John Thomas, for the year 1873, his term commencing March 1st, of that year.

Calef neglected to remove the corn until late in May, whether by the consent of John Thomas or not, is in controversy; and then commenced to remove it with ox teams. Phœbe Thomas objected to the use of ox teams in removing

the corn, insisting they would damage her land more than horses; but no heed was given to this objection.

John Thomas commenced plowing for his spring crop before the corn was all removed, and made frequent complaints to Phœbe Thomas that Calef was not removing his corn sufficiently to enable him to progress with his work. Calef had been notified previously to remove the corn, and there is evidence tending to show that the two teams employed for that purpose by him, and which were constantly engaged at it, were sufficient to remove the corn fast enough to keep out of the way of the teams of John Thomas in plowing.

Finally, Phœbe Thomas burned, on one occasion, several of the shocks of corn, and shortly afterwards a number more, in all sixty shocks.

Calef, after the burning, saw Phœbe Thomas, and she acknowledged that she had burned it; whereupon he went to the State's attorney and made a statement in regard to the matter, and he advised that she be prosecuted for malicious mischief. The State's attorney prepared an affidavit charging her with burning the corn, which Calef took to a justice of the peace, subscribed and swore to, and obtained a warrant for her arrest. She was arrested, went before the justice, waived an examination, and entered into recognizance for her appearance at the next term of the circuit court, to answer to an indictment to be preferred against her for malicious mischief.

At the next term of the circuit court the case was presented to the grand jury, who ignored the bill, and she was discharged.

The present suit is brought by Phœbe Thomas against Rufus Calef, in consequence of that prosecution. The jury found a verdict in her favor for $1055.55, upon which the court gave judgment, and he appeals therefrom to this court.

The principles of law applicable to the case, are, in the main, well settled and familiar to the profession. Blackstone says, a *private nuisance* is "anything done to the hurt or annoyance of the lands, tenements or hereditaments of another." Book 3d, (Sharswood's edition) 214, side 216. And in the same

book, at page 5, he also says, "whatsoever unlawfully annoys or doth damage to another, is a nuisance, and such nuisance may be abated, that is, taken away or removed by the party aggrieved thereby, so as he commits no riot in the doing of it."

But in order to justify the removal it must appear that the obstruction was wrongfully incumbering his premises, and that he therefore removed it, doing no unnecessary damage. If it appear that he unnecessarily destroyed it or appropriated it to his own use, the justification fails. Waterman on Trespass, sec. 684. So it is again said by the last named author, in sec. 686, "The party complaining of an injury has no right to do an unnecessary damage to the adverse party, notwithstanding the latter is in the wrong. He has not even the right to take such measures as will relieve his land in the most speedy manner, though he is not bound to exercise his right of removal in the way most convenient for the wrong doer." See, also, *Great Falls Co.* v. *Worster*, 15 N. H. 412; Wood on Nuisances, sec. 834, and authorities referred to in note, and also sec. 838.

What was said in *Ogden* v. *Lucas*, 48 Ill. 492, was not intended to be in contravention of the foregoing principles, and can not be considered as so holding. The question there turned on the sufficiency of the pleas, and it was not necessary, nor did the court undertake to lay down a precise rule where one person may destroy the property of another.

The statute under which the plaintiff was charged and arrested, provides that whoever wilfully or maliciously burns, or causes to be burned, any barrack, cock, crib, rick or stack of hay, corn, wheat, oats, barley, or other grain or vegetable product of any kind, or any pile of coal, wood or any other fuel, or any pile of boards, plank, posts, rails, or other lumber, or any personal property whatever, of another, shall be imprisoned in the penitentiary not less than one nor more than six years." Laws of 1867, p. 158, sec. 1.

Taking the word "or," as here used conjunctively, it was necessary, to establish the plaintiff's guilt, to show that she

acted "maliciously" in burning the corn, but it was not indispensable for that purpose that there should be direct proof of expressions of hatred or ill will; it was sufficient if it appeared, from all the evidence, the act was prompted by feelings of malevolence or revenge toward the defendant, and that it was not merely for the purpose of abating a nuisance.

Under the evidence before us we can hardly suppose an intelligent jury would feel authorized to find that the corn could not have been reasonably removed out of the way, and that its destruction by fire was absolutely necessary to the enjoyment of the use of the land. It is, indeed, questionable whether it was not being removed with sufficient rapidity to enable the tenant to prosecute his plowing, with all the force he had, uninterruptedly.

Still, the plaintiff is not to be deemed guilty simply because she misjudged her legal rights, and acted with too much precipitation. If a person of ordinary prudence and caution, situated as she was, and subject to the influences that operated on her mind, would have supposed the act was necessary to the enjoyment of the use of the property, and she acted under that belief, she could not be held guilty of having acted maliciously.

On the other hand, the defendant, by making the charge against the plaintiff and procuring her arrest, was not bound to prove her guilt or procure the finding of an indictment against her, at the peril of being personally responsible in an action for damages. If he acted upon probable cause, he was excusable, whatever the result of the prosecution, and it devolved upon the plaintiff to prove that he acted maliciously and without any reasonable or probable cause.

If the defendant, in good faith, communicated to the State's attorney all the material facts affecting the question of the plaintiff's guilt which were known to him, and acted upon his advice, the presumption of malice is rebutted and the action must fail.

The fourth instruction given by the court, at the instance of the plaintiff, was as follows:

"The court instructs, for the plaintiff, that if the jury believe, from the evidence, that plaintiff leased or rented her farm to one Morgan Thomas for the crop season of 1872, said term to expire on the first of March, 1873, and that she rented the same land to one John Thomas for the crop season of 1873, his term to commence on said first day of March and continue for a year, and that defendant purchased part of the crop grown in 1872, and standing in cocks on the premises, and suffered the said corn to remain on the premises after the term of the first named tenant expired, and after said first day of March, 1873, and that after said first day of March, and before any corn was burned, the plaintiff gave or caused to be given to defendant notice to remove his corn from said premises, and that defendant neglected, through the months of April and May, to remove said corn, and that he insisted upon the right to enter said premises, when the ground was wet, with large teams of oxen, for the purpose of removing said corn, and thereby tramped and greatly injured the ground, and left said corn so standing in the way of the said John Thomas, tenant of plaintiff, while he was endeavoring to cultivate the land in the spring season of 1873, such facts and circumstances should be considered by the jury, if they appear in proof, in determining whether they have such facts and circumstances, when taken and considered in connection with all other proof in the cause, as would warrant a reasonable man in concluding that plaintiff did not burn the corn in question in order to get it out of the way of the cultivation of the land by her tenant, but that she burned it with criminal intent; and if the jury believe that all the facts and circumstances proved did not warrant defendant, acting as a cautious man would act, in believing that plaintiff acted with criminal intent, and that, in causing her arrest, he acted maliciously, if he did cause her arrest, then the jury shall find for the plaintiff."

This instruction is liable to, at least, two grave objections. In the first place, it singles out and gives undue prominence to certain facts, ignoring other facts proved of equal im-

portance in a proper determination of the case; and, in the second place, the fact that defendant insisted upon his right to enter the plaintiff's premises, when the ground was wet, with large teams of oxen, and that he thereby greatly trampled and injured the ground, is made an element, and apparently an important one, in determining whether the defendant had probable cause to believe that the plaintiff was guilty of the charge he preferred against her.

What possible connection had these facts with the question of the plaintiff's guilt or the motives with which the defendant prosecuted? The defendant may have been guilty of a trespass by entering the plaintiff's premises with oxen, but how did that give the plaintiff the right to burn his corn? Surely, it can not be pretended that one wrong confers a right to offset with another wrong, nor that the fact that the defendant committed a trespass upon plaintiff's property tends to show that he knew that she was not guilty of malicious mischief in burning his corn.

The seventh instruction given by the court, at the instance of the plaintiff, is also objectionable, in presenting, as an element in the case, the fact that defendant was guilty of a trespass in entering to get the corn after the expiration of the tenancy of Morgan S. Thomas, on the first of March, 1873.

The eighth instruction, given at the instance of the plaintiff, is as follows:

" The court instructs, for the plaintiff, that if they believe, from the evidence in the cause, that shortly after burning the corn plaintiff and defendant had a conversation, in which she told him, in substance, that she burned the corn to get it out of her way or out of the way of her tenant, and in which conversation she asked defendant why he did not remove the corn in the winter, when the ground was frozen, and in answer to which defendant had said, in substance, that he did not need the corn then, and that he could only haul a load a day in the winter, and in which conversation plaintiff told defendant that he had only been removing a load a day anyway, and that de-

fendant replied that he had grass then for his stock, and did not need more than a load a day of the corn, and in which plaintiff asked defendant why he had not come to see her about the matter when she had recently sent him word to do so, and why he had not ceased to send a large ox team to tramp up her ground, and take his corn out with a horse team, when she had requested him to do so by message, sent by his hand who was hauling the corn, and to which defendant replied, in substance and to the effect, that he did not think it worth while, that he did not see what good it would do to come to see her, and in which said conversation defendant then told plaintiff that he would teach her a lesson that she would find expensive and hard to take, and that defendant had made this latter declaration, that he would teach plaintiff a lesson, before he had taken legal advice, such facts and circumstances are to be considered by the jury, together with all the other evidence in the cause, in determining the question as to whether defendant acted from malice and in a spirit of revenge toward plaintiff in instituting the alleged prosecution against plaintiff, if the jury believe, from the evidence, that defendant did institute such prosecution."

This is liable to the objections pointed out in regard to the fourth instruction, but it is far more objectionable in that the assumed colloquy between plaintiff and the defendant is not supported by any evidence in the record. This, the counsel for the plaintiff concede, but insist, nevertheless, in point of fact there was such proof. The misfortune for them is, that we can know no case save that presented by the record.

We are not prepared to say that either of the instructions asked by the defendant, and modified by the court, should have been given without some modification, but we are not entirely satisfied with the substance of the modification made by the court. The fourth may be taken to illustrate our view. As asked, it read:

"The court instructs the jury, that if they believe, from the evidence, that the plaintiff wilfully set fire to and burned about

sixty shocks of corn belonging to the defendant, as stated in the complaint, under oath, of the defendant, read in evidence to the jury, on behalf of the plaintiff, then, and in such case, the defendant had probable cause for the procuring of the plaintiff to be arrested on a charge of malicious mischief, and the jury should find the defendant not guilty."

Had the words "and maliciously" been inserted after the word "wilfully," the instruction would have been free from objection. The court modified it by adding: "Unless the jury believe, from the evidence, that the corn was on the premises of the plaintiff, and that he, the defendant, refused to remove the corn in reasonable time after notice to do so from plaintiff, if the proof shows he had such notice."

This, in effect, says, if the corn was left on the plaintiff's premises after the defendant had reasonable notice to remove it, the plaintiff can not be guilty of malicious mischief for burning it. This is not the law. We have already seen, that, under the right to abate a private nuisance, she might have removed it, but in doing so she was bound to use reasonable care to avoid doing unnecessary injury to it, and that she had no right to destroy it unless there was no other reasonable way by which she could enjoy the use of her land.

The following instructions were asked by the defendant, but the court, through inadvertence, neither marked them given nor refused, and they were not given to the jury:

"1st. The court instructs the jury, for defendant, that if they believe, from the evidence, that the defendant had probable cause to institute the criminal proceedings against the plaintiff, then the plaintiff can not recover. Probable cause is defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense of which she is charged.

"2d. The court instructs the jury, for the defendant, that the burden of proof in this case is upon the plaintiff to show that the defendant, in instituting the prosecution before D.

McWilliams, a justice of the peace, for malicious mischief, acted without probable cause, and if they believe, from the evidence, that the plaintiff has failed to show a want of such probable cause by a preponderance of testimony, then the jury will find for the defendant."

These instructions announce correct principles of law, and they were of importance to the rights of the defendant. The same thing does not appear to have been said in other instructions, and we are of opinion the defendant may have been prejudiced by their not having been given to the jury. It does not appear that defendant's counsel were, in any degree, responsible for the oversight of the court, and the effect is precisely as if the instructions had been formally marked refused. We think it was error.

There was also error in the admission of evidence as to the character of teams used by defendant in hauling the corn, and the damage they did to the land. The effect of this must have been to improperly aggravate the damages, by adding damages sustained to the real estate to those sustained by the plaintiff by reason of her prosecution and arrest.

We are by no means satisfied that the defendant did not show probable cause for the prosecution. The plaintiff was guilty of conduct, if not malicious certainly exceedingly reckless, and we are unable to appreciate upon what basis so large a verdict can be predicated. We are not satisfied that the evidence shows the defendant withheld from Reed the knowledge of any material facts affecting the question of the plaintiff's guilt, and if not, the verdict should be for the defendant, on the ground that he acted under the advice of competent counsel.

The judgment is reversed and the cause remanded.

*Judgment reversed.*

Mr. CHIEF JUSTICE SCOTT: I am of opinion defendant made a full and fair statement of all the material facts of the transaction out of which this litigation arose, to the State's attorney, to enable him to advise him as to his duty in the matter, before

Syllabus.

he commenced the criminal prosecution, and in good faith acted on the advice received from that officer. Under the decisions of this court, that advice was a sufficient warrant for instituting the criminal prosecution. Whether plaintiff was guilty of a criminal act in destroying defendant's property, or whether she was justifiable in so doing, are questions that need not be discussed in this case. I do not concur in that portion of the opinion that discusses these questions.