## JOHN J. ANDERSON
### v.
## SYLVANUS W. WARNER.

1. FRAUDULENT SALE.—In order to make a sale fraudulent as to creditors, it is not enough that the purchaser knew the seller was designing to defraud his creditors, but it must appear that the purchaser participated in the fraud by entering into the common design, and intending on his part to defraud the creditors of his vendor.

2. REVIEWING EVIDENCE IN INSTRUCTIONS.—If the court undertakes in

an instruction to canvass the evidence, it should go over the whole evidence on both sides and tell the jury to consider it all, and not refer simply to the evidence upon one side.

3. INSTRUCTION AS TO REIMBURSING PURCHASER.—In a trial of the right of property, by a purchaser, where the defense alleges that the sale was fraudulent and intended to defeat creditors, it is error to instruct the jury that the purchaser could set off as against the demand of his vendor, the value of the property taken by the attaching creditors of the vendor. Such a question has nothing to do with the issue in the case, and the jury may be improperly influenced by such an instruction.

APPEAL from the Circuit Court of Henry county; the Hon. A. A. SMITH, Judge, presiding. Opinion filed, February 14, 1880.

Mr. CHAS. K. LADD, for appellant; that the court erred in admitting evidence of the relationship of the parties and the acts of the vendor after the sale, cited Phillips on Ev. 276; 1 Greenleaf's Ev. 210; Phœnix v. Assignee, 5 Johns. 426; Hessing v. McCloskey, 37 Ill. 341; Miner v. Phillips, 42 Ill. 123; Reed v. Noxon, 48 Ill. 325.

The court should not single out particular facts in an instruction, ignoring others: Calef v. Thomas, 81 Ill. 478; Evans v. George, 80 Ill. 51; Ogden v. Kirby, 76 Ill. 555; Ins. Co. v. Nelson, 75 Ill. 548; Hewitt v. Johnson, 72 Ill. 513; Graves v. Colwell, Ill. Sup. Ct. June 21, 1879; Chesney v. Meadows, Ill. Sup. Ct. June 21, 1879.

Instructions should not be argumentative: C. B. & Q. R. R. Co. v. Harwood, Ill. Sup. Ct. Feb. 22, 1879.

The purchaser must join with the vendor in the fraudulent intent or the sale will not be tainted: Brown v. Riley, 22 Ill. 46; Hessing v. McCloskey, 37 Ill. 341; Waterman v. Donalson, 43 Ill. 29.

There is no presumption of fraud because the parties are relatives: Nelson v. Smith, 28 Ill. 495; Waterman v. Donalson, 43 Ill. 29; Herkelrath v. Stookey, 63 Ill. 486.

A constructive delivery was all that was necessary even as against attaching creditors: Gibson v. Stevens, 8 How. 384; Wilkes v. Ferris, 5 Johns. 344; Lucas v. Darrien, 7 Taunt. 278; Manton v. Moore, 7 Tenn. Rep. 67; Manton v. Dubois, 6

Wall. 548; Hatch v. Oil Co. 11 Chicago Legal News, Dec. 27, 1879; Webster v. Granger, 78 Ill. 230; Peters v. Elliott, 78 Ill. 321; Straus v. Minzeshiemer, 78 Ill. 492; Morrson v. Woodley, 84 Ill. 192.

Affirmative testimony is of more weight than negative: C. B. & Q. R. R. Co. v. Dickson, 88 Ill. 431.

Evidence of fraud must be clear: Shinn v. Shinn, Ill. Sup. Ct. Feb. 4, 1879.

Where an instruction which would mislead a jury is given the verdict should be set aside: Frantz v. Rose, Ill. Sup. Ct. Jan. 25, 1879.

Appellant has a right to secure his own debt: Dudley v. Danforth, 61 N. Y. 626.

Mr. C. C. WILSON and Mr. J. K. BLISH, for appellees; that fraud may inferred if the facts proved satisfy the jury that it existed, cited Reed v. Noxon, 48 Ill. 323.

If the record shows that substantial justice has been done, the judgment will not be reversed because of technical objections to instructions or admission of evidence: Greenup v. Stoker, 3 Gilm. 202; Young v. Silkwood, 11 Ill. 36; Newkirk v. Cone, 18 Ill. 449; Gillett v. Sweat, 1 Gilm. 475; Smith v. Shultz, 1 Scam. 491; Leigh v. Hodges, 2 Scam. 15.

Nor where there is sufficient evidence to sustain the verdict: Shultz v. Lepage, 21 Ill. 160; Boynton v. Phelps, 52 Ill. 210.

Nor where it is apparent a re-trial will produce the same result: McConnell v. Kibbe, 33 Ill. 176; Curtis v. Sage, 35 Ill. 22; Root v. Curtis, 38 Ill. 192; Boyington v. Holmes, 38 Ill. 59; Potter v. Potter, 41 Ill. 80.

LACEY, J. The appellees were attaching creditors of Charles Crawford and commenced several suits before a justice of the peace.

The appellant gave the statutory notice to the constable to try the right of property, which suits were tried before the justice and appeal taken to the Circuit Court. The several cases were by agreement consolidated and tried as one resulting in judgment and verdict for appellees.

The property in question was two cultivators, two breaking plows, two harrows, one two-horse carriage, one bay mare, one bay horse and two black speckled ponies.

Appellant was the son-in-law of Crawford, and previously to and at the time of the purchase of the property, they lived in Kewanee in the same house.    The Appellant was an engineer of a stationary engine and Crawford owned the goods in question.

The appellant claims to have purchased the property in controversy and considerable more—in fact all the personal property owned by Crawford.    Crawford, it appears, was a good deal in debt and had gone to Nebraska to look up a location, with the design of removing, and at the time of the claimed purchase, was traveling in Nebraska and had been gone about three weeks.    Appellant claims to have paid for the property $424.75, which he claims Crawford owed him and to have given his notes dated 11th or 12th July, 1878.    One due in 18 months, and one in three years, and that he sent the notes to Crawford through the mail.    Appellant was left in charge of the property when Crawford left, and claims to have bought the farming implements about one month before he did the other property.    The bargain to purchase was made through letters passing between them.

After the purchase, as claimed by appellant, the property was attached by the appellees about the 18th July, 1878, as the property of Crawford.

It was claimed by appellees on the trial in the court below, that the sale by Crawford to appellant was merely colorable, and was made to appellant for the purpose of hindering and delaying Crawford's creditors, and that appellant participated in that design.    That in fact, the sale to appellant was fraudulent and void as to appellees.    On the other hand, appellant contended that the sale at least, so far as he was concerned, was *bona fide*, and without any intention to hinder and delay the creditors of Crawford.    The evidence was somewhat conflicting, and it became a question for the jury to determine whether the sale was fraudulent or not, and it was important that the jury should be properly and clearly instructed as to

the law applicable to the facts in the case, and that they should
not be mislead by the instructions of the court, directing their
attention to irrelevant matters, or giving too much promi-
nence to the evidence of either side. On the trial of the case,
the appellees asked, and the court gave instructions Nos. three,
four and six. The third instruction tells the jury that if Craw-
ford in making the sale designed to defraud his creditors, and
appellant knew it and *consented* to it, then the sale was void.

This we think is erroneous. In order to make the sale void,
appellant should have participated in the fraud by entering
into the common design and intending on his own part to de-
fraud the creditors of Crawford. He must have become an
actor in the fraudulent transaction. He may have known full
well what Crawford designed and consented to it by making
the purchase, but the sale on his part may have been *bona fide*
without any intention of aiding Crawford in helping to defraud
his creditors, but for the purpose of securing his own debt.
Dudley v. Danforth, 61 N. Y. 626; Herkelrath et al v. Stookey
63 Ill. 487, and cases cited.

The fourth instruction in substance tells the jury that as a
matter of law if appellant should lose the property in question
or any part of it by judicial process, then, in an action between
Crawford and appellant, the latter could set off as against the
demand of Crawford the value of the property so taken away
whether the action be upon a promissory note or otherwise.
This instruction was very much calculated to mislead the jury.
In the first place it had nothing to do with any issue in the
case. It was the duty of the jury to find for appellant if they
believed from the evidence that the sale was complete in law
and in good faith on the part of the appellant, it mattered not
whether the appellant could make himself whole by litigation
after he had lost the property in controversy. That was a
matter the jury should not have been called on to consider. In
a case like this it would be a most powerful appeal to them
for the court to say in substance that the appellant can lose
nothing, as he has a defense against his notes, and can recover
his loaned money which was claimed to be a part consideration
for the property. We can readily see how, in a case where the

evidence was conflicting, the jury might be improperly influenced by such an instruction.

The sixth instruction is as follows:

6.   " To determine the good faith of the alleged sale of the property in question by Crawford to Anderson, we may properly consider all the facts and circumstances in proof in connection with said sale, and may consider the facts, if proven, that Anderson was the son-in-law of Crawford and lived in his family and that the property was left on Crawford's premises in charge of his hired hand under the control of Anderson, and that when the alleged sale was finally consummated, that Anderson executed his notes and sent the same to Crawford, while he, Crawford was traveling about the State of Nebraska, 'looking up a location and intending to return in a few days, if proven ; and the further fact that Crawford took away a part of said property in the night, with the consent of Anderson, and that he was afterwards, and while he was in the State of Iowa, joined by said Anderson and went with him to Nebraska, where they have since lived together."

The court, by this instruction, undertakes to canvass the salient points of the evidence of the appellee and calls the attention of the jury particularly to it, to the exclusion and detriment of the evidence on the part of the appellant.

Such an instruction is well calculated to mislead the jury by inducing them to think that the court lays special stress on the facts recited in the instruction.   If the court undertakes to canvass the evidence in an instruction it should not only canvass the whole evidence on one side but on both, and tell the jury to consider all.   Not a word is said in the instruction about the appellant's evidence.   The jury are not told to consider that.   Similar instructions have been often condemned by the Supreme Court.   Calef v. Thomas, 81 Ill. 478; Evans v. George, 80 Ill. 51; Ogden v. Kirby, 76 Ill. 555; Herkelrath v. Stookey, 63 Ill. 486.

For these errors of the court, in giving the erroneous instructions, the judgment is reversed and the cause remanded.

Reversed and remanded.