**James E. Buck, Appellant, v. Hugh McIntosh, Appellee.**

1. NUISANCE—*when liability for maintenance of, commences.* Where a party comes into possession of land as grantee or lessee with an existing nuisance upon the same, and he merely permits the nuisance to remain or continue, he cannot be held liable in an action for damages until he has been first notified or requested to remove the nuisance.

2. NUISANCE—*right of individual abatement.* The peremptory and summary abatement of a nuisance is justified upon the arising of an emergency which cannot be met by the ordinary processes of the law.

Trespass. Appeal from the Circuit Court of Hamilton county; the Hon. P. A. PEARCE, Judge, presiding. Heard in this court at the August term, 1907. Affirmed. Opinion filed March 18, 1908.

ISAAC H. WEBB, J. H. LANE and W. F. SCOTT, for appellant.

THOMAS & ANDERSON and F. M. PARISH, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellant brought suit against appellee in trespass, charging in his declaration that during the year 1906, he, as tenant for another, had raised a fine crop of corn which on November 22 was matured and ready to be gathered; that said lands were protected from overflow of surface water on the south side by an embankment eighteen inches high, erected on the north side of a ditch, both on the land he had rented; that on said date, when by reason of heavy rains, surface water filled said ditch and stood about fifteen inches high around the south side of the embankment, appellee cut the embankment causing the water to flow in and greatly injure appellant's crop. Appellee filed a plea of not guilty and also a special plea in which he admitted cutting the levee and set up as a matter of justification, that he was possessed of land adjoining appellant's on the south; that his land was the dominant heritage and that of appellant the servient heritage; that he had a right to have the surface water that fell on his land flow over the same onto appellant's; that against his protest and objection appellant's landlord built a levee to prevent this; that he requested appellant to remove the same, that he refused to do so and that he, appellee, then entered on appellant's premises and removed part of the same, doing as little damage as possible. A jury was waived, trial had by the court and appellee found not guilty. The matters relied on by appellant to reverse the judgment, are that the decision of the court was contrary to the weight of the evidence, that the court erred in refusing to hold as the law certain propositions submitted by him and did hold as the law certain other propositions offered by appellee.

The controversy between the parties grew out of the following state of facts. About five or six years prior to the commencement of the suit Walter Johantgen

owned the southeast quarter of section one and the appellee owned the northeast quarter of the northeast quarter and the east half of the northwest quarter of the northeast quarter of section twelve adjoining said first named tract on the south, both in the same township in Hamilton county, Illinois, and both included in the Haw Creek Drainage District. This district constructed a ditch called its "east lateral" from the southwest corner of said section one, north along the west side of section one to its main ditch; the then adjoining landowners in sections one and twelve, including Johantgen and appellee, constructed a joint ditch connecting with this lateral at the southwest corner of section one and running a mile east on the section line between sections one and twelve. The ditch was the widest where it entered the lateral and gradually grew narrower until at the southeast corner of section one it was only twenty to thirty inches wide. Adjoining appellee's premises the ditch was all dug on Johantgen's land and the dirt put on the north side of the ditch, Johantgen constructing the east half and appellee the west half of the ditch. There seems to have been no certain agreement or understanding that the dirt thrown out on the north side of the ditch was to be a levee, but Johantgen appears to have attempted to form one and use it as such. In some places he put in logs back of the dirt to hold it. When heavy rains came the water naturally flowed towards the ditch from the south onto Johantgen's land, and the levee so formed, held the water and backed it on the appellee's land. Appellee objected to this and cut holes in the levee to let the water through. There was considerable contention for several years over the matter with talk of legal proceedings on the part of Johantgen. Finally the matter seems to have been abandoned, places in the ditch allowed to fill up and part of the levee permitted to wash down or be worn down until it offered little resistance to the water. This was the condition when Johantgen sold out to W. W. Gray, appellant's

landlord, about two years before the present suit. After Gray got the land he cut a ditch from the northeast corner of appellee's land to the northeast corner of section one, then along the north line of the section to its northwest corner, where it connected with the "east lateral." He also cut a ditch east and west through the middle of the south half of section one running into the "east lateral"; and cleaned out, widened and deepened the old ditch on the south line of the section and rebuilt the old levee on the north side of the ditch, raising it some two feet high.

John Hunsinger was agent for Gray and attended to his matters pertaining to the drainage of the land. He had several talks with appellee without satisfactory results in regard to permitting the levee to remain. Appellee testified that he told Hunsinger he must leave openings, that if he backed the water onto him he would cut the levee. Hunsinger proposed to cut a ditch north from the one in controversy to the one running through the south half of the section and consulted appellee to see if that would satisfy him. Appellee testifies he told him "Yes, if you carry that water away. I don't want it damming up on me," and Hunsinger says appellee told him he did not want the levee there. This ditch running north as constructed did not carry all the water and in November, 1906, while appellant's corn was still standing in the field, appellee found the water backed in on him twenty-five or thirty rods and admits the cutting of the levee to let the water through. When it was cut the water went through and damaged appellant's corn and hindered him greatly in gathering what was not destroyed.

It clearly appears from the record that appellee's land was the dominant heritage and the land farmed by appellant the servient; that the original embankment thrown up on the north side of the ditch by appellee and Johantgen, even if it was ever a continuous levee, which is doubtful, was not permitted by appellee

to remain so and that it had become full of breaks or holes long prior to the time appellant's landlord purchased the land on which it stood; and that at the time the levee was reconstructed and the gaps closed by Gray, appellee never consented that it should be constructed and remain as a continuous permanent levee to back up water over his lands.

Whether appellant took possession of the land with notice that appellee would cut the levee in case the water backed up, was a controverted question.

The questions of law affecting the case were raised by propositions submitted to the court by the respective parties. Appellant complains that propositions 1, 2, 3 and 8 submitted by him were refused by the court. Propositions 1, 2 and 3 asserted in different ways, as the law, that when a party comes into possession of land as a lessee with an existing nuisance upon it, placed there by his landlord, the same cannot be abated to the injury of the lessee, until he has been notified to remove it; and proposition 8 stated that where the landlord creates a *private* nuisance wholly upon his own premises, and afterwards leases the premises to a person who does nothing in regard to the nuisance, except to allow it to remain, the same cannot be lawfully abated by another who enters upon the lessee's possession for that purpose, without first notifying the lessee to remove the same. The insistance of appellant is that these propositions stated the law correctly and that had the court so held, the finding must have been for him. While there is some conflict among the authorities on the subject, it seems to be the established rule in this state as held in Groff v. Ankenbrandt, 124 Ill. 51, where will be found a number of cases upon the subject, that "where a party comes into possession of land as grantee or lessee with an existing nuisance upon such land, and he merely permits the nuisance to remain or continue, he cannot be held liable in an action for damages until he has been first notified or requested to remove the nuisance." And the reason for

the rule there given is that "it is not right that one who did not put the nuisance upon the premises in the first place should be held responsible for injuries that may not have been caused by any act of his own."

But while the rule requires notice to the lessee before bringing suit against him, so that he can remove the nuisance and avoid a judgment for damages against him, yet the same rule would not necessarily apply in all cases to the abatement of a nuisance by the injured party.

It might be that to require a similar notice to be given before abating a nuisance, would deprive the injured party of all benefit to be derived from the removal of the nuisance. For instance it might have been in the case before us, that if notice was required and appellant could not have been readily found, the crops of appellee would have been destroyed by the water before notice could have been given.

The general rule giving an injured party the right to abate a nuisance such as this is not a matter of controversy.

In 1 Am. & Eng. Enc. of Law (2nd Ed.), 79, it is said: "Abatement of nuisances by private individuals has its origin in the common law, which allows this private and summary method of doing one's self justice because injuries which obstruct or annoy one in the enjoyment of such things as are of daily convenience and use, require an immediate remedy and cannot await the slow progress of the ordinary forms of justice."

In Calef v. Thomas, 81 Ill. 478, our Supreme Court says: "The principles of law applicable to the case, are, in the main, well settled and familiar to the profession. Blackstone says a private nuisance is 'anything done to the hurt or annoyance of the lands, tenements or hereditaments of another.' Book 3rd (Sharswood's edition) 214, side 216. And in the same book, at page 5, he also says, 'whatsoever unlawfully annoys or doth damage to another, is a nuisance, and

Buck v. McIntosh.

such nuisance may be abated, that is taken away or removed by the party aggrieved thereby, so as he commits no riot in the doing of it. But in order to justify the removal it must appear that the obstruction was wrongfully incumbering his premises, and that he therefore removed it, doing no unnecessary damage."

We think the general rule relating to the abatement of nuisances was applicable to this case notwithstanding the fact that appellant was a lessee, and that under the circumstances the four propositions above referred to were properly refused by the court.

Appellant's fifth proposition which stated that where adjoining landowners agree upon and construct a combined system of drainage, either landowner may repair or open up the drains in case they become filled and may enlarge the same so as to properly drain the lands in accordance with the original plan, was modified by the court by adding thereto the words, "but such repairing or cleaning of the ditch must not go beyond the original contract." While appellant excepted to the modification he has not indicated wherein he conceives it to be wrong, and an examination of it discloses nothing erroneous. What is above said will also dispose of the objections to the three propositions of law offered by appellee and held by the court as the law applicable to the case.

The evidence in the case was sufficient to sustain appellee's case, no complaint is made as to the ruling of the trial court upon questions of evidence and the theory of the law applicable to the case adopted by the trial court appears to us to have been the correct one, consequently the judgment appealed from will be affirmed.

*Affirmed.*