CHICAGO AND ALTON RAILROAD CO.

v.

RALPH M. HOYT.

16 237
76 600

1. FELLOW-SERVANT—QUESTION OF FACT.—While the definition of fellow-servants may be a question of law, whether the particular case falls within the definition is always a question of fact to be determined from the evidence.

2. GROUND OF LIABILITY OF MASTER.—It is the relationship into which the parties are brought by the nature of their several employments which

C. & A. R. R. Co. v. Hoyt.

constitutes the ground of liability or non-liability of the master for the neg-
ligent acts of his servants toward each other, in contradistinction from an
actual, present and personal consociation of the individuals themselves in
the performance of their several duties at the time of the injury.

3. INSTRUCTIONS.—As the instructions given for appellee made the
appellant's liability depend upon whether or not appellee and the train men
were known to each other, and not usually working together, and not
actually co-operating in the same business or work at the time of the injury,
they are erroneous.

APPEAL from the Circuit Court of McLean county; the
Hon. O. T. REEVES, Judge, presiding.   Opinion filed January
23, 1885.

Messrs. WILLIAMS, BURR & CAPEN, for appellant; as to fel-
low servants, cited C. & A. R. R. Co. v. O'Bryan, 15 Brad-
well, 134; Honnor v. I. C. R. R. Co., 15 Ill. 550; I. C. R. R.
Co. v. Cox, 21 Id. 20; C., C. & I. C. Ry. Co. v. Troesch, 68 Id.
545; T., W. & W. Ry. Co. v. Durkin, 76 Id. 395; C. & N.
W. Ry. Co. v. Swett, 45 Id. 197; C. & A. R. R. Co. v. Keefe,
47 Id. 108; C. & N. W. Ry. Co. v. Taylor, 69 Id. 461; St. L.
& S. E. Ry. Co. v. Britz, 72 Id. 256; C. & N. W. Ry. Co. v.
Moranda, 93 Id. 302; C. & E. I. R. R. Co. v. Geary, (Sup. Ct.
Ills.) Chi. Legal News, June 14, 1884, p. 318; Thompson on
Neg., pp. 1026–1030; Wood on Master and Servant, §§ 425, 427
and 435; C. & N. W. Ry. Co. v. Scheuring, 4 Bradwell, 533;
Morgan v. Ry. Co., 1 L. R., Q. B., 149; Farwell v. B. & W. R.
R. Co., 4 Metc. 49; Priestly v. Fowler, 3 M. & W. 1; Coon v.
S. & U. R. R. Co., 5 N. Y. 492; Slater v. Jewett, 85 N. Y. 61;
Wonder v. B. & O. R. R. Co., 32 Md. 411; Boldt v. N. Y. C.
R. R. Co., 18 N. Y. 432; Gilshannon v. I. B. R. Co., 10 Cush.
228; Wright v. N. Y. C. R. R. Co., 25 N. Y. 562; Hutchin-
son v. Railway Co., 5 Exch. 343; Wilson v. Merry, L. R., 1 H.
h., I App. Cas. 326.

Mr. M. W. PACKARD and Messrs. STEVENSON & EWING, for
appellee; cited C. & N. W. Ry. Co. v. Swett, 45 Ill. 197; I.
C. R. R. Co. v. Welch, 52 Ill. 182; C. & N. W. Ry. Co. v.
Jackson, 55 Ill. 492: C., B. & Q. R. R. Co. v. Gregory, 58
Ill. 272; Ryan v. C. & N. W. Ry. Co., 60 Ill. 171; T., W.

& W. R. R. Co. v. Fredericks, 71 Ill. 294; P. Ft. W. & C. Ry. Co. v. Powers, 74 Ill. 341; T. W. & W. Ry. Co. v. Moore, 77 Ill. 217; J. & St. Louis R. R. Co. v. Mergenstern, 106 Ill. 216; Wabash Ry. Co. v. Elliott, 98 Ill. 481; Penn. Co. v. Conlan, 101 Ill. 93; C. & A. R. R. Co. v. Bonifield, 104 Ill. 223.

Where the court can see that justice has been done, the case will not be reversed on the ground of an erroneous judgment: Race v. Oldridge, 90 Ill. 250; N. E. F. & M. Ins. Co. v. Wetmore, 32 Ill. 221; Stickle v. Otto, 86 Ill. 161; C. & W. Ia. R. R. Co. v. Dooling, 95 Ill. 202; Martin v. People, 13 Ill. 341; Lawrence v. Hagerman, 56 Ill. 68.

McCulloch, J. Appellee, who is by trade a carpenter, was in the employment of appellant in its shops and railroad yards at Bloomington. It appears from the evidence, that one of his duties was to inspect the tops and sides of all the cars composing the freight trains coming into the yard from the north, and some of those from the south, as soon as they came in. At the time he received the injury complained of, a freight train had just come in from the north and had come to a standstill or nearly so. Hoyt at the time was on top of a car on an adjoining track, and just as the moving train had stopped or nearly so, he stepped across onto the car next to the engine of the incoming train. He then passed over that car and the next one, and, just as he was stepping from that to the third one, a violent jerk took place in the train, by which it was separated by the breaking of the draw bar, at the point where appellee was stepping from one car to the other. He was thereby precipitated to the ground and badly injured in his person. For his damages sustained in consequence thereof, he brought suit and recovered the judgment from which this appeal is taken.

On the part of appellee it was claimed that at the time he stepped upon the first car of the incoming train it had come to a full stop, and that he was acting in strict obedience to the rules laid down for him, to the effect that he should not go upon the train while in motion. On the part of appellant it

is contended that the train was still in motion and therefore appellee was guilty of such negligence, contributing to the injury he received, as to prevent a recovery.

Appellee contended that after the train had come to a full stop, and the brakemen were in the act of letting off the brakes, and he had entered upon the duties of his employment, exercising at the same time all proper care, the engine suddenly started forward with such violence as to cause the separation of the train, thereby causing him to fall.

Appellant contends that the track was on a down grade and as the train came in, the cars had come close together so that those in the rear were pushing against those in front, and the train was moving by its own momentum without the application of any steam; that, upon the signal being given to stop, the brakemen on the rear end of the train began setting the brakes, thus retarding the motion of the cars and causing a strain upon each coupling, as the slack, as it is termed, was taken up. The train in question was a very long and heavy one, and it is contended that the jerk before mentioned was caused by this taking up of the slack.

There is plausibility in each of these claims, and the record contains evidence in support of both. Upon all the foregoing questions there was a very decided conflict of evidence. But, conceding all that appellee claims to be true, it is not very clear to us wherein the negligence of the engineer consisted in starting his engine as he did. This point, however, does not seem to be much dwelt upon in the arguments of counsel, and we pass to the real point in the case.

It is contended on the part of appellant that no recovery can be had in this case because appellee was a fellow servant with those by whom his injury was occasioned.

It is now well settled that while the definition of fellow servants may be a question of law, yet it is always a question of fact, to be determined from the evidence, whether the particular case falls within the definition. I. & St. L. R. R. Co. v Morgenstern, 106 Ill. 216; C. & N. W. Ry. Co. v. Moranda, 108 Ill. 576; C. & A. R. R. Co. v. O'Bryan, Adm'x, 15 Bradwell, 134.

C. & A. R. R. Co. v. Hoyt.

This being so, it would seem to follow, especially in a case where the right of recovery is in doubt, that the rule should be given to the jury with substantial accuracy. The views the court below entertained upon the law of the case, and upon which it was tried, are substantially embodied in the third, fourth and fifth instructions given to the jury on the part of appellee, which are as follows:

III. The court further instructs the jury for the plaintiff that although they may believe from the evidence that Hoyt was guilty of some degree of negligence in getting upon the freight train described in the declaration, yet if they further believe from the evidence that the servants of defendant in charge of said train, and operating the same, were guilty of gross negligence in handling the same, and thereby injured the plaintiff, as set forth in the declaration, and if the jury further believe from the evidence that the negligence of the plaintiff was slight as compared to the negligence of the defendant, and if the jury further believe from the evidence that the plaintiff was not employed in the same line of duty with the servants of the defendant, so in charge of said train, that they were strangers to plaintiff and not usually working together, and that they were not engaged in the performance of the *same duty* or co-operating in the same work when the injury complained of occurred, then the jury will find the defendant guilty, and assess the plaintiff's damages at the sum they believe from the evidence he has sustained, not to exceed ten thousand dollars.

IV. The court further instructs the jury for the plaintiff that if they believe from the evidence that the plaintiff was employed as a carpenter in the yard of defendant at Bloomington, and did not know and was not usually associated in his duties with the servants of defendant in charge of the train upon which the plaintiff was injured (if the jury believe from the evidence he was so injured), and if the jury further believe from the evidence that at the time of the happening of the injury complained of in the declaration (if the jury believe from the evidence the same did so happen), the plaintiff and the servants of defendant in charge of and running said

train were not employed in and about the performance of the same duty, then the plaintiff and the servants of defendant in charge of and running said freight train were not fellow servants in the view of the law.

V. You are further instructed that even though two servants may be employed by the same master, yet if they are not by their usual duties brought into habitual association with each other, and are not at the particular time in question co-operating with each other in any particular business or work, they are not fellow servants in the same line of employment.

The seventh instruction given for appellee, after reciting the other elements of the case necessary to a recovery, concludes as follows: " and if the jury further believes from the evidence that the plaintiff and the said servants of defendant in charge of said train were unknown to each other, and were not employed in the same line of duty, were not usually working together, and were not at the time of the happening of the injury complained of, engaged in doing the same duty or work, then they will find the defendant guilty."

From an examination of these instructions it will appear that, to the mind of the court below, admitting that the train men and appellee were all in the employment of appellant, if appellee was not employed in the same line of duty with them, if they were strangers to him, if they were not usually working together, if they were not engaged in the performance of the same duty, or co-operating in the same work when the injury occurred, then they were not fellow servants.

In the fourth instruction the phrase, " was not usually associated in his duties with the servants of defendant," is substituted for the phrase, " were not usually working together," as found in the third and seventh. In the fifth instruction the language is, " yet, if they are not, by their usual duties, brought into habitual association with each other."

That these expressions were all intended to mean the same thing is evident from the further fact that counsel for appellee, in their reply to the criticisms of counsel for appellant upon the fourth instruction, make use of the following lan-

C. & A. R. R. Co. v. Hoyt.

guage: "Now the instruction tells the jury plainly that in order to find that the plaintiff, Hoyt, was not a fellow servant with the train men, in view of the law, they must believe from the evidence that he did not know, and was not usually associated in his duties with them, and they must further believe that they were not employed in and about the performance of the same duty at the time of the happening of the injury. If this does not cover the whole ground, we confess ourselves unable to do so with the whole array of cases before us, collected and examined in the Moranda case, 93 Ill. 321."

The jury were therefore told in divers ways, as in the seventh instruction, that if appellee and the train men were unknown to each other, if they were not employed in the same line of duty, if they were not usually working together, or usually associated together in their duties, and were not at the time of the injury, engaged in doing the same work, they were not to be regarded as fellow servants. This, it is contended, is the rule of the Moranda case. 93 Ill. 321; 108 Ill. 576.

The majority of this court do not think the restrictions thrown around the case by these instructions are at all warranted by the case just cited.

We can not see what figure it cuts in the case whether or not appellee and the train men were unknown to each other, for if their relations in other respects were such as to constitute them fellow servants, the fact of their acquaintance or non-acquaintance with each other is of no consequence. The hundreds of men employed in appellant's shops may be fellow servants, and yet they may, to a large extent, be unacquainted with, or unknown to each other. We may therefore lay this element of the instructions aside without further consideration.

The next element of the instructions is that if they were not employed in the same line of duty, the relation between the train men and appellants was not that of fellow servants. This is true as an abstract proposition, yet it needs to be so guarded as to convey to the minds of the jurors the idea that the same line of duty means the accomplishment of a certain

purpose of the master in which such servants are engaged, although their respective duties may be different.

It will be observed, however, that the instructions in question say, in effect, that if the train men and appellee were not, by their usual duties, brought into habitual association with each other at the time of the injury, and if they were not then co-operating with each other in any particular business or work, then they were not fellow servants. Such is the import of the fifth instruction, and we think the same inference is fairly deducible from the others.

The plain deduction to be drawn from these instructions is, that at the time of the accident there must have existed between appellee and the train men of this particular train, an habitual association with each other in the performance of their usual duties, or else at the time of the injury they must have been co-operating with each other in some particular business, work or duty. We do not think either proposition is maintained by adjudged cases.

This court had occasion to examine with a great deal of care the doctrine of the Moranda case, in C. & A. R. R. Co. v. O'Bryan, 15 Bradwell, 134. We there found an instruction in almost the identical language with the fifth above quoted. In commenting upon the same, our late lamented presiding judge used this language: "The terms 'brought into habitual association' and 'co-operating' with each other in any particular business or work, are so general and vague that they would convey to the mind of the juror, unlearned in the law, a very indefinite idea of the law of fellow servants, and as applied to the facts of the case before the jury, could hardly have failed to mislead them."

"To co-operate in a particular work would most likely be understood as requiring the parties to be engaged in doing exactly the same work, at the same time and place, and under the same foreman. In all such work there must necessarily be division of labor among servants; one does one thing and another a different thing. In performing different parts of the work, it is not uncommon for the servants to work under different overseers or foremen, but all are alike the servants of a common master."

C. & A. R. R. Co. v. Hoyt.

"And when engaged in the same line of employment, if there is a natural and necessary connection between the different parts thereof, such as necessarily brings the servants into frequent contact with each other in the prosecution of their work, they are co-servants. We do not understand this view of the law to be in conflict with the doctrine of the Moranda case. On the contrary, it is fully supported by the Murphy case there quoted and approved as unquestionable law."

The instruction in the Murphy case which was held to be the law was as follows: "If the jury believe from the evidence, that both the deceased and the engine driver, at the time the deceased was injured, were in the employment of the railroad company, and that their ordinary duties in such service bore such relations to each other that the careless or negligent act of the engine driver endangered the safety of the deceased, then such danger was incident to the employment of the deceased and the plaintiff can not recover in this case."

The refusal to give this instruction was really the turning point in that case.

The doctrine of the Moranda case is reiterated in same case, 98 Ill. 576, and still more recently in C. & E. I. R. R. Co. v. Geary, 110 Ill. 383, and yet we hear nothing of any departure from the rule laid down in the Murphy case. The Geary case, just cited, was one wherein a night watchman at a street crossing was injured by a switch engine, and it was held that in view of the particular circumstances of the case the party injured and the driver of the engine were fellow servants.

Taking all the cases into consideration we are convinced that it is the *nature* of the employments in which the several parties are engaged, and not the *fact* that they were at the very time of the injury in habitual association of a personal nature in. the performance of their respective duties, which is to govern.

There are two elements mentioned in the Moranda case which need to be kept distinctly in view. The first is, if the servants of the common master are, at the time of the alleged act of negligence, directly co-operating with each other in the

particular business in hand (an expression much wider in its scope than that they were co-operating in the same work or duty), they are fellow servants for whose acts of negligence to each other the master is not liable. The second is, if their usual duties shall bring them into habitual consociation, so that they may exercise an influence upon each other promotive of proper caution, then they in like manner are fellow servants for whose acts of negligence to each other the master is not liable.

The difficulty in this case arises from a difference in opinion as to the import of the language used in the second proposition. The foundation of the doctrine now under discussion lies in the rule, that the servant in entering into the employment of his master assumes the risk of all the dangers incident thereto, including that of the negligence of his fellow servants. Now it is very easy to see, that if a new brakeman, fireman or engineer, is employed on a particular train, or as a member of a particular crew, he at once becomes the fellow servant of all associated with him in the operation of the train or in the crew in which he is engaged.

But if a third person, such as a car inspector, whose daily duties brought him into contact with these same train men in the performance of his duties, should be injured by the negligence of some or all of them, it would lead to a strange absurdity to say that the master should be liable for the negligent acts of those longest in his employ, because the car inspector had become habitually associated with them by long acquaintance and consociation in the performance of his duties, and yet would not be liable for the negligent acts of the new comer on the same train, because time and opportunity had been wanting to the car inspector to form such an acquaintance or consociation. The bare statement of a proposition like this carries with it its own refutation.

In our view of the Moranda case, therefore, it is the relationship into which the parties are brought by the nature of their several employments which constitutes the ground of liability or non-liability of the master for the negligent acts of his servants toward each other, in contradistinction from

an actual, present and personal consociation of the individuals themselves in the performance of their several duties at the time of the injury. Thus, the night watchman had nothing whatever to do with the operation of the engines and trains, but his employment was such as to bring him into very close relationship with all the men in that employment. At the moment of entering the employment of the common master he became fellow servant with them, and the master never became liable to him for their negligent acts. In such a case, although there may be co-operation in the business in hand, there is neither co-operation in the performance of a particular work or duty, nor any habitual association in the performance of usual duties, nor yet any personal consociation or acquaintance between these different employes; and yet the nature of their several employments is such as to ultimately bring about these several conditions.

If, therefore, two or more persons enter into the employment of a common master in the doing of some work or in the prosecution of some enterprise of his, and if their respective duties under such employment are such as to require their direct co-operation with each other in the particular business in hand, or if they are such as to bring them frequently into such close relationship as to expose them to danger from the negligent acts of each other, and to enable them to exercise an influence upon each other promotive of proper caution, they must run the risk of each other's negligence, from the time of their several employments, although such negligence may have occurred on their first meeting.

These principles were violated in the instructions given for appellee, in making appellant's liability to depend upon whether or not appellee and the train men were known to each other, and not usually working together, and not actually co-operating in the same business or work at the time of the injury. Under such a rule the employer's liability is made to depend upon the fortuitous circumstances growing out of the actual personal relations existing between his employes at the very time of the injury, rather than upon the relationship growing out of the nature of their several employments.

It is true each particular case must depend upon its own facts, but there must be some general rule of liability to which the facts in each case must conform. As was said in the Morgenstern case, 106 Ill. 216, whether they were fellow servants depended upon a variety of facts which had to be proved before the jury. " The inquiry would arise whethei they were in the service of a common master; were they engaged in the same line of employment; were the existing relations between them of such a character, and their duties such as to bring them often together, co-operating in a particular work. These, and perhaps other facts of a kindred character, were matters to be proved before the jury, and from the facts thus proved it was for the jury then to say whether the two servants, in the discharge of their duties, were fellows."

We are therefore of the opinion that the rule given to the jury for their guidance in determining whether or not appellant and the train men were fellow servants of a common employer, was erroneous in the particulars already alluded to. For these reasons the judgment of the circuit court will be reversed and the cause remanded.

Reversed and remanded.

DAVIS, P. J. I do not concur in the foregoing opinion. I think the court below properly instructed the jury, and that the judgment should be affirmed.