World's Columbian Exposition v. Bell.

## World's Columbian Exposition v. Elise Bell, Adm'x.

1.  INSTRUCTIONS—*Not Marked " Given."*—Where the record shows that the instructions were in fact given to the jury, the case will not be reversed because the trial court inadvertently failed to mark them " Given."

2.  APPELLATE COURT PRACTICE—*Motions for New Trials and Assignments of Error.*—Where the point that an instruction was given to the jury without being marked " Given," is not specifically made either in

the written motion for a new trial filed in the court below, or in the errors assigned in the Appellate Court, it can not be urged as a ground for reversal.

3. PRACTICE—*Motions for New Trial.*—Only one copy of a motion for a new trial with the reasons is required, and that is to be filed with papers so that both court and counsel may have access to it.

4. SAME—*After Motion Filed.*—A party is not bound to read his motion for a new trial to the court *in extenso*, or to comment upon each and every item thereof. He will not be deemed to have waived the points not read or commented upon provided he has not in some manner deceived the trial court or otherwise waived such points.

5. FELLOW-SERVANTS—*Risks of Negligence of.*—The negligence of fellow-servants is one of the ordinary perils of the service, of which one takes the hazard in entering into an employment.

6. SAME—*Personal Acquaintance.*—A personal acquaintance between different servants of the same master is not necessary to constitute the relation of fellow-servants.

7. EMPLOYER AND EMPLOYE—*The Former Not an Insurer.*—The rule that a common carrier of persons for hire is practically an insurer of the safety of passengers does not exist in the case of employer and employe.

8. SAME—*Where Neither are at Fault—Accidents.*—Where neither employer nor employe is to any extent at fault, then, as between them, any injury or damage which may come to either of them by reason of the employment must be held, in law, to be from an accident for which neither is liable to the other.

9. SAME—*Duty of Employer.*—The law requires of every employer that he be vigilant and careful, and that he exercise every reasonable care and caution in the selection of co-employes for the safety and protection of all persons employed by him.

10. SAME—*Reciprocal Duties and Obligations.*—The duties and obligations of employer and employe, though greatly differing in extent, are reciprocal. Neither is an insurer of the other against every injury which may result from an accident, where he is not guilty of any negligence or lack of proper care or caution.

**Trespass on the Case.**—Death from negligence. Trial in the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Verdict and judgment for plaintiff, $5,000. Appeal by defendant. Heard in the Branch Appellate Court, First District, at the March term, 1898. Reversed. Opinion filed May 31, 1898.

## STATEMENT.

This suit was commenced by appellee to recover from appellant for damages caused by the death of Peter Bell through the negligence of one of its employes. It is not

claimed that there was any negligence on the part of appellant by reason of any defects in, or in the use of, imperfect or insufficient appliances, or for the want of proper care in the selection of its employes.

The accident resulting in the death of said Peter Bell occurred in the afternoon, January 7, 1893, in the Manufactures Building in the World's Fair grounds. Deceased was in the employ of appellant in what was known as the Color Department. He was one of, perhaps, one hundred painters thus employed in and about said building, all of them being under the same foreman and the same assistant foreman, and doing the same kind of work. A part of the time these painters were calcimining or painting where it was necessary to use scaffolds or stages, which were hung or suspended from some beam or rafter by ropes and pulley blocks so that they could be hoisted and lowered to the desired height by the painters using them. They were hung by what are called "riggers," that is, by sailors, who were familiar with handling and tying ropes. These stages were made like ladders, with boards or planks over them; some were twenty and some twenty-four feet long, supported at each end by the ropes mentioned. There were about thirty such stages in use in that one building. They were usually hung end to end near to each other, but sometimes at such distance that the painters put a plank over the space so that they could pass from one to the other.

Upon each of these stages, when in use, there were sometimes two and sometimes three men, called a gang. At the time the accident occurred there were but two men on the stage where deceased was, viz., the deceased and William J. Lehigh. Upon the stage next south there were three men, viz., one Matson, Charles Olsen and John Smith Elisius. Each gang painted what was called a " stretch," i. e., a strip about the same width as the length of the stage each occupied, so that the " stretch " painted by one gang would meet with that painted by the next gang. The stages could be hoisted or lowered independent of each other, except where they were connected by a plank, as stated, or

where they were lashed together, as it was "a common thing to do." Usually the same men worked together as a gang, though not always so, but the gangs were changed from place to place. They moved from one stage to another and from one part of the building to another. When a stage was lowered to the floor the painters would go to another stage which had been before that hung by the sailors, and the sailors would take the stage thus lowered to the floor to the proper place and hang it in position ready for use again.

The business and employment of the deceased was the same as that of each of the other painters working there. Each man had his own paint bucket and paint brush while at work. When work closed for the day these were all put together, and the next morning each man selected one for himself without regard to whether he had used it before. The kind and color of paint used was the same, character and kind of work was the same, and done in the same way, same kind of appliances were used, rigged in the same manner, the men worked the same hours, lunched together at the same time, received the same wages; they were employed by the same foreman "to work together," were under the same assistant foreman, their time was kept in the same manner by the same man, and they were members of the same body of workmen at work for the same employer in the same building at the same time, having one and the same object, and all working together with the same purpose to reach the same end.

The deceased and Lehigh, also Elisius, Olson and Matson, had all been at work there in the same manner and under the same circumstances and conditions for two months, and the deceased for more than that length of time.

The stage upon which deceased and Lehigh were working was next north of the one upon which Elisius, Olson and Matson were working. These two stages "at the time of the accident were hung right on the same line with one another, end to end." The "ties" at the south end of the deceased's stage and at the north end of the Elisius stage

were near together. Elisius attempted to untie the rope sustaining the north end of his stage, but by mistake he untied the rope sustaining the south end of the stage of deceased. The result was that the deceased and Lehigh were thrown to the floor and one was killed and the other more or less seriously injured.

Each one of these parties was familiar with the manner in which the stages were hung and lowered and hoisted, and their location and relation to each other. Sometimes they were used by the painters as a continuous scaffold in passing to and from lunch.

John A. Post and John B. Brady, attorneys for appellant; Samuel S. Page, of counsel.

Servants are fellow-servants when, first, they are usually associated in their daily duties; second, when they are co-operating in the particular work they are about. C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302; Rolling Mill Co. v. Johnson, 114 Ill. 64; C. & A. R. R. Co. v. Hoyt, 122 Ill. 374; C. & N. W. R. R. Co. v. Snyder, 117 Ill. 388.

A servant assumes the risk of the negligence of fellow-servants. T., W. & W. Ry. Co. v. Durkin, 76 Ill. 397; C., B. & Q. Ry. Co. v. Avery, 109 Ill. 322; Valtez v. O. & M. Ry. Co., 85 Ill. 500.

To constitute fellow-servants it is not necessary that they should be acquainted with each other. C. & A. R. R. Co. v. Hoyt, 16 Ill. App. 243; Klees v. C. & E. I. R. R. Co., 68 Ill. App. 246.

Servants may be fellow-servants although their duties are dissimilar, provided the risk of injury from the negligence of the one is so much a natural consequence of the employment which the other accepts that it must be included in the risks which he is supposed to have considered in engaging in the employment. Morgan v. Vale of Heath R. R. Co., L. R., 1 Q. B. 149; Rapalje & Lawrence Dictionary, 242.

N. A. Kaufman, attorney for appellee; Church & McMurdy and J. Warren Pease, of counsel.

Mr. Justice Horton gave the above statement and delivered the opinion of the court.

The point is made by appellant that one of appellee's (plaintiff's) instructions was read and given to the jury, but was not marked either "Given" or "Refused." The case of Calef v. Thomas, 81 Ill. 478, 487, cited by counsel for appellant, is not in point. There, instructions which should have been, were not given to the jury, but they were not marked "Refused." The real error was in not giving them, and the court held that "the effect is precisely the same as if the instructions had been formally marked refused." The Supreme Court has, however, removed all doubt upon the question. In Tobin v. People, 101 Ill. 121, it is held that even in a criminal case, where the record shows that instructions were in fact given to the jury, the case will not be reversed because the trial court inadvertently failed to mark them "Given." Another and sufficient answer to this objection is that it is not specifically made either in the written motion for a new trial filed in the court below, or in the errors assigned in this court.

Appellee seeks to limit appellant to particular assignment of errors under the rule laid down in C. E. Street Ry. Co. v. Van Pelt, 68 Ill. App. 583. It is there held that where one of the reasons assigned in a written motion for a new trial filed in a cause was not mentioned in the argument of the motion in the trial court, that the matters stated in such reason can not be assigned for error in a court of appeal. We can not follow this ruling.

This question is very fully considered in R. R. Co. v. McMath, 91 Ill. 104, where it is held that under the present statute "only one copy of the reasons for a new trial is required, and that is to be filed with the papers so that both court and counsel may have access to it." Also, that it is sufficient if the bill of exceptions shows that the motion was made and overruled and an exception taken; also, that "if plaintiff in error had filed certain points in writing, particularly specifying the grounds of his motion, then he would, of course, be confined in the Appellate Court to the

reasons specified in the court below, and would be held to have waived all causes for new trial not set forth in his written grounds."

There is no intimation in that case that if plaintiff in error had filed a written motion he would be held to have waived all such points contained therein as were not read to the court below, and commented on by counsel upon the argument of the motion.

When it is held that a party will be considered to have waived all points not contained in his written motion, the converse must be considered as sustained, viz., that he has not waived any points which are contained therein. A party is not bound to read his motion to the court *in extenso*, or to comment upon each and every item thereof. Nor is he to be deemed to have waived those points not read or commented upon, provided he has not in some manner deceived the trial court, or otherwise waived such points. The following cases bear to a greater or less degree upon this question:  Coal Co. v. Schaefer, 135 Ill. 217; Hintz v. Graupner, 138 Ill. 166;  Bromley v. People, 150 Ill. 299; R. R. Co. v. Goff, 158 Ill. 455; Brewing Co. v. Boddie, 162 Ill. 346;  R. R. Co. v. White, 166 Ill. 378; R. R. Co. v. Sanders, 66 Ill. App. 442.

Since writing the foregoing, the Supreme Court has handed down an opinion affirming the Van Pelt case, *ante*. It is there stated that the record shows that the Appellate Court " diligently examined the  *  *  *  things therein assigned as for error," and held that the opinion of the Appellate Court is no part of the record, and can not be resorted to by the Supreme Court to overcome the recitals in the record.   It may, perhaps, be fairly inferred from the opinion of the Supreme Court, that the rule expressed in the opinion of the Appellate Court upon this point would not be sustained by that court.

It is claimed by appellant that Peter Bell assumed the risk of the negligence of his fellow-servants.   In Ry. Co. v. Durkin, 76 Ill. 397, Mr. Justice Breese, in delivering the opinion of the court, said that when a person enters a par-

ticular service, " He thereby undertakes to run all the ordinary risks incident to the employment,   *   *   *   and this includes the risk of occasional negligence or unskillfulness of his fellow-servants engaged in the same line of duty, or incident thereto, provided such fellow-servants are competent and skillful to discharge the duty assigned them."

As stated by Mr. Justice Sheldon in R. R. Co. v. Avery, 109 Ill. 314, 322, " The negligence of fellow-servants is one of the ordinary perils of the service which one takes the hazard of in entering into any employment."

In Valtez v. R. R. Co., 85 Ill. 502, the rule is stated thus : " Where the ordinary duties and occupations of the servants of a common master are such that one is necessarily exposed to hazard by the carelessness of another, they must be supposed to have voluntarily taken the risks of such possible carelessness when they entered the service, and must be regarded as fellow-servants within the rule."

There remains to be considered the important question whether Bell, Lehigh and Elisius were fellow-servants.

Counsel for appellee commence their argument upon this point with the statement that " It must, perhaps, be conceded, and indeed the court itself has said so in the Moranda case (93 Ill. 308), that in its consideration of the numerous cases which have come before it involving this question, the Supreme Court of this State has gradually evolved a rule, more stringent toward employers of labor than the courts of some other States have recognized."

As between employer and employe, the relation is mutual, and the duties, obligations and risks incident thereto are mutual. They may be working together in such manner that if both were in the employ of the same master they would be what the law styles " fellow-servants." This is not infrequently the case. Under such circumstances each owes to the other the same duty to so act that neither shall be injured by reason of want of proper care and diligence.

The law requires of every employer that he be vigilant and careful, and that he exercise every reasonable care and caution in the selection of co-employes and otherwise, for

the safety and protection of all persons employed by him. The law also requires of every employe that he be vigilant and careful, and that he exercise every reasonable care and caution in the performance of his duties. The duties and obligations, though greatly differing in extent, are reciprocal. Neither is insurer of the other against every injury which may result from any accident, when he is not guilty of any negligence or lack of proper care or caution.

The reason for the rule that a common carrier of persons for hire, is, practically, an insurer of the safety of passengers, does not exist in the case of employer and employe. Where neither employer nor employe is to any extent at fault, then, as between them, any injury or damage which may come to either by reason of the employment, must be held, in law, to be from an accident for which neither is liable to the other.

We must not be understood as intimating that the duties and obligations of employer and employe to each other are the same in extent. We are speaking now only of the principle upon which all such liability is predicated. Cases are rare where the employe would be liable to the employer, and are far too frequent where the employer is liable to the employe.

The opinions of the courts of this State were prepared with the rules here expressed in view, and must be interpreted and applied bearing the same in mind.

C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302, is a leading case in this State upon the question of who are fellow-servants. It is there stated (p. 313), that "the common law rule—whereby the master is made to answer for damage done to others by the neglect of his servant—is plainly unjust when applied to a case where the master has with due care employed a competent and careful servant and is himself guilty of no wrong. As a matter of strict justice, a man who himself has done no wrong, ought not as a mere matter of justice be compelled to answer for the negligence of another;" but they say that the rule of *respondeat superior*, although unjust to the master, rests upon considerations

of policy, and that " the well-being of society. is best subserved thereby," and that " the rule is founded on the expediency of throwing the risk upon those who can best guard against it," and " if this be· so, the liability of the master must turn upon the proper consideration in each class of cases of what ruling will, in fact, throw the risk upon those who can best guard against it;" that " the best interests of society demand that all business should at all times be so conducted that the least possible harm shall be caused thereby; that all servants, especially those controlling dangerous instrumentalities, shall constantly use due care."

It is also there held that the same considerations of policy, which, to avoid injuries to third persons, usually demand that the master be held responsible, seem plainly not to demand it in the case of fellow-servants.

The only ground upon which the Exposition Company can be held liable in this case, is that it is responsible for the carelessness of Elisius. He and the deceased had been working in the same line of work in the same building for two months or more. It does not appear whether they had before that day worked upon adjoining stages. That is not, however, a controlling fact. They had during that ·time worked upon stages next to other employes when not next to each other, and the rule announced in the Moranda case as to the influence of. co-employes to promote in each other care and caution, has' the same application to Elisius; whoever the employes may have been, from time to time, working upon the adjoining stages.

We shall not attempt a review of the numerous cases in Illinois courts bearing upon this question, but refer to Rolling Mill Co. v. Johnson, 114 Ill. 57; C. & A. R. R. Co. v. Hoyt, 122 Ill. 369; R. R. Co. v. Swan, 70 Ill. App. 331, 335.

It is urged by appellee, in effect, that personal acquaintance is necessary to constitute fellow-servants. Such is not the law. We quite agree with the Appellate Court, third District, when it says in C. & A. R. R. Co. v. Hoyt, 16 Ill.

App. 237, 243 (affirmed in 122 Ill. 369): "We can not see what figure it cuts in the case whether or not appellee and the trainmen were unknown to each other, for if their relations in other respects were such as to constitute them fellow-servants, the fact of their acquaintance or non-acquaintance with each other is of no consequence."

A careful consideration of the facts in this case leads us irresistibly to the conclusion that Peter Bell and Elisius were fellow-servants at the time of the accident which resulted in the death of said Bell. We are not unmindful of the case of Lehigh v. Exposition Co., 67 Ill. App. 27, which grew out of the same accident. Whether co-employes are fellow-servants, is a question of fact for the jury under proper instructions, as there held. That case was taken from the jury at the conclusion of plaintiff's testimony. In the case at bar, testimony was offered by the defendant below. A somewhat different state of facts is shown.

The judgment of the Circuit Court must be reversed. We do not see that any different state of facts can be presented upon another trial, and therefore the case is not remanded.